Stephanie R. Tatar – State Bar No. 237792
**TATAR LAW FIRM, APC**
3500 West Olive Avenue, Suite 300
Burbank, California 91505
Telephone: (323) 744-1146
Facsimile: (888) 788-5695
Stephanie@thetatarlawfirm.com

*Attorney for Plaintiff George Mason*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

EDCV13-0779 SVW (SPx)

| | |
|---|---|
| GEORGE MASON<br><br>**Plaintiff,**<br><br>v.<br><br>**EQUIFAX INFORMATION SERVICES LLC** and **GREEN TREE SERVICING LLC**<br><br>**Defendant.** | CIVIL ACTION NO.<br><br>COMPLAINT FOR VIOLATIONS OF FAIR CREDIT REPORTING ACT<br><br>DEMAND FOR JURY TRIAL |

## PRELIMINARY STATEMENT

1.  Defendant Equifax Information Services LLC ("Equifax") a national consumer reporting agency ("CRA") has been selling credit reports inaccurately marking Plaintiff as deceased. When it inaccurately reports a living consumer as deceased Equifax makes it practically impossible for that consumer to access credit, as it did with Mr. Mason. Equifax's practice also harms the businesses that purchase its reports; as such companies cannot process credit applications due to the applicant's lack of a credit score. There is no good faith rationale to explain Equifax's practice other than the generation of revenue. If Equifax actually believed that Mr. Mason was deceased, it had no legally permissible basis to sell his report. If Equifax believed Mr. Mason was alive, it knowingly sold his report

1

Complaint and Jury Demand

with a gross inaccuracy. Moreover, Equifax knows that identity thieves use the credit information of truly deceased persons to commit credit fraud. The source of this information is a Green Tree Servicing, LLC ("Green Tree") account reporting on Plaintiff's Equifax credit report. Green Tree similarly has no procedure in place to assure that it accurately reports a deceased notation to the consumer reporting agencies. Equifax thus violated Plaintiff's rights under the Fair Credit Reporting Act ("FCRA") and the Consumer Credit Reporting Agencies Act ("CCRAA") and Green Tree violated the CCRAA as set forth below.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

3. Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff George Mason is an adult individual residing in Cathedral City, CA.

5. Defendant Equifax Information Services LLC is a consumer reporting agency that regularly conducts business in the Central District of California, and which has its headquarters and a principal place of business located at 1550 Peachtree Street Northeast, Atlanta, GA.

6. Defendant Green Tree Servicing LLC ("Green Tree") is a business entity that regularly conducts business in the Central District of California, and which has a principal place of business located at 345 St. Peter St., St. Paul MN.

## FACTUAL ALLEGATIONS

**Equifax's Practices Concerning the Sale of Reports on the "Deceased"**

7. Equifax sells millions of consumer reports (often called "credit reports" or "reports") per day, and also sells credit scores. 15 U.S.C. § 1681a(e).

2

Complaint and Jury Demand

8. Pursuant to the FCRA, Equifax must follow procedures which assure that the reports it sells meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

9. Pursuant to the FCRA, Equifax must maintain reasonable procedures to assure that reports are sold only for legitimate "permissible purposes." 15 U.S.C. §§ 1681e(a) & 1681b.

10. Equifax places a "deceased" notation or marking on reports when it is advised from any of its many data furnishing sources that a given consumer is deceased.

11. The furnishing sources identify "deceased" consumers by marking the "status" of such consumer's responsibility for any subject account with an "X" code in the ECOA field of an electronic data input format used in the credit reporting industry, known as Metro or Metro 2.

12. Equifax does not request or require a death certificate from any of its data sources which advise that a consumer is "deceased" before placing a "deceased" mark on that consumer's report.

13. Equifax does not request or require any proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

14. Equifax does not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

15. A deceased notation is a very unusual marking upon a credit file or credit report.

16. In some cases, in order to assure accuracy, Equifax sends letters and/or other communications to consumers when certain information that may be considered suspicious or unreliable is furnished about said consumers to be placed

3

in their Equifax credit files, such as in cases where consumers have a freeze or fraud alert on their credit report, or in accordance with certain state laws, such as the consumer laws of Colorado. But Equifax has no similar procedure to notify the consumers (such as a next of kin or executor or administrator of the consumer's estate) when an "X" deceased code is furnished to Equifax to be placed in said consumer's credit file or report.

17. Equifax regularly receives the "Death Master File" from the Social Security Administration listing by social security number those consumers that the government believes to be deceased. But Equifax does not cross-reference the "X" code received from furnishers with the Death Master File in order to determine whether any given consumer reported as deceased via a furnishing source is also on the Death Master File before selling a credit report about said consumer, or at any time.

18. Equifax will only use the Death Master File to sell additional products for an additional fee which are designed to show whether a given consumer is truly deceased.

19. Indeed, Equifax employs no procedures *at all* which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

20. Even in instances where other data on the face of the consumer's report indicates that he/she is not deceased, Equifax employs no procedures which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

21. Even in instances where the purportedly deceased consumer communicates directly with Equifax, Defendant employs no procedures which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

22. Once a "deceased" mark is placed upon a consumer's report, Equifax will not calculate and will not provide a credit score for that consumer.

23. Nevertheless, Equifax routinely sells to third parties credit reports for persons with a "deceased" mark on their reports with no credit score, despite a request by the purchaser of the report for a credit score for that consumer.

24. Upon Equifax's reports with a "deceased" mark sold to third parties Equifax never calculates or provides a credit score for that consumer.

25. Equifax knows that third party credit issuers use a credit score in order to process a given credit application.

26. Equifax knows that many third party credit issuers require a credit score in order to process a given credit application.

27. Equifax knows that consumers without credit scores are unable to secure any credit from most credit issuers.

28. Equifax knows that living consumers are turned down for credit specifically because Equifax is reporting them as "deceased" and without a credit score.

29. Equifax has been put on notice for years through consumer disputes and lawsuits that living consumers are turned down for credit specifically because Equifax is reporting them as "deceased" and without a credit score.

30. Equifax has received and documented thousands of disputes from consumers complaining that their Equifax credit report had them erroneously marked as "deceased."

31. Equifax knows that thousands of consumers are erroneously marked as "deceased" on their Equifax credit reports via an erroneous furnishing of the "X" code, but said consumers are not on the Death Master File and are, in fact, alive.

32. Nevertheless, Equifax employs no procedures which assure that a consumer marked as "deceased" on one of Equifax's reports is, in fact, deceased.

33. Even consumers who dispute the erroneous "deceased" status on their Equifax credit reports continue to be erroneously marked as deceased unless the furnishing source which provided the erroneous "X" code in the first instance decides to change the code.

34. Equifax has no independent procedure to change an erroneous deceased status on its own and will merely parrot its furnishing source in the case of a reinvestigation into the accuracy of the deceased status upon a consumer's report, which reinvestigation was triggered by a consumer dispute.

35. Nor does Equifax employ any procedures to limit or stop the furnishing of reports to third parties for consumers which it has marked as "deceased" under any circumstances.

36. For years after a consumer's actual death, Equifax will continue to sell credit reports about that consumer.

37. Equifax will only remove a deceased consumer's file from its credit reporting database when it is no longer valuable to Equifax – meaning that nobody is continuing to buy that report from Equifax.

38. Equifax charges third parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased") as it would for any other report.

39. Equifax profits from the sale of reports on the deceased.

40. Equifax has in its credit reporting database hundreds of thousands of "deceased" tradelines corresponding to distinct credit files for individual consumers that it has marked as "deceased."

41. Equifax knows that truly deceased consumers do not apply for credit.

42. Equifax knows that the credit information and reports of truly deceased persons are used by criminals to commit identity theft or credit fraud.

1  Indeed, identity theft using the personal identifying information of deceased
2  consumers is known to Equifax to be a common and major source of identity theft.

43. Equifax knows that identity theft and credit fraud are serious and widespread problems in our society.

44. Equifax warns the relatives of truly deceased consumers that identity theft can be committed using the credit reports and information of the deceased, and requires relatives to provide a death certificate or executorship papers, among other proofs, before accessing the deceased consumer's credit information or report.

45. Equifax has no similar death certificate, executorship paper, or any other proof requirements for its data sources which report a consumer as deceased or for the buyers of its reports which access the purportedly deceased consumer's information.

46. Indeed, Equifax sells reports on the deceased to third parties in an automated fashion and without any specific or general certification that could reasonably explain a "permissible purpose" for purchasing or using a (supposedly) deceased consumer's credit history and/or report.

47. For consumers who are deceased, there exists no permissible purpose under the FCRA for Equifax to ever sell their credit reports, absent a court order.

48. Equifax knows that such reports contain a vast amount of personal identifying and credit account information on the supposedly deceased consumer, information that can be used to commit identity theft or for other fraudulent purposes.

49. For a period of time since February 2013 Plaintiff had been marked by Equifax as "deceased" on his Equifax credit report. The inaccurate information includes but is not limited to being marked as deceased in connection with a Green Tree account reporting on Plaintiff's Equifax credit report.

50. Plaintiff is not deceased.

51. Equifax did not calculate or provide any credit score for or on Plaintiff, even though it sold reports about him to third parties marking him as "deceased."

52. Plaintiff was declined for service for alarm system for his home in February 2013. Among other transactions, known and unknown, Equifax sold a credit report marking Plaintiff as deceased to Total Watch Security on, or around February 3, 2012 and Alert Center, Inc. on, or around, February 5, 2012 when Plaintiff applied for service through those businesses.

53. In or around February 2013, Plaintiff became aware that Green Tree was reporting an account to Equifax, which included a deceased status.

54. Green Tree knew or should have known that Plaintiff was alive.

55. Green Tree did not maintain any procedure to confirm an erroneous deceased status of an account prior to reporting such a status to the consumer reporting agencies.

56. As a result, Defendants made it practically impossible for Plaintiff to obtain service or credit, and Plaintiff was indeed turned down for service for alarm system for his home in February 2013 as a result of Defendants' erroneously reporting Plaintiff as deceased.

57. As a result of Defendants' conduct, Plaintiffs have suffered actual damages in the form of credit denial or loss of credit opportunity, credit defamation, harm to credit score and emotional distress including anxiety, frustration, embarrassment and humiliation.

58. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

8

Complaint and Jury Demand

59. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal and state law and the rights of the Plaintiff herein.

## COUNT I – VIOLATIONS OF THE FCRA
## (PLAINTIFF V. EQUIFAX)

60. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

61. At all times pertinent hereto, Equifax was a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

62. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

63. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

64. Pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o, Equifax is liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency of information pursuant to 15 U.S.C. § 1681e(b).

65. The conduct of Equifax was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff that are outlined more fully above and, as a result, Equifax is liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

Complaint and Jury Demand

## COUNT II – VIOLATIONS OF THE CCRAA
### (PLAINTIFF V. EQUIFAX)

66. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

67. Equifax is a "consumer reporting agency" as defined by Cal. Civ. Code § 1785.3(d).

68. Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(b).

69. The above-mentioned credit reports were "consumer reports" as that term is defined by Cal. Civ. Code § 1785.3(c).

70. Pursuant to Cal. Civ. Code § 1785.31, Equifax is liable for violating the CCRAA by failing to follow reasonable procedures to assure "maximum possible accuracy" of the reports it sold, in violation of Cal. Civ. Code § 1785.14(b).

71. The conduct of Equifax was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff that are outlined more fully above and, as a result, Equifax is liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## COUNT III – VIOLATIONS OF THE CCRAA
### (PLAINTIFF V. GREEN TREE)

72. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

73. Green Tree is a "person" as defined by Cal. Civ. Code § 1785.4(j).

74. Green Tree is a "furnisher" of consumer and credit information as that term is used in Cal. Civ. Code § 1785.25(a).

75. Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(b).

76. The above-mentioned credit reports were "consumer reports" as that term is defined by Cal. Civ. Code § 1785.3(c).

77. Pursuant to Cal. Civ. Code § 1785.31, Green Tree liable for violating the CCRAA by furnishing inaccurate information to the consumer reporting agencies that it knew, or should have known, was false, in violation of Cal. Civ. Code § 1785.25(a).

78. The conduct of Green Tree was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff that are outlined more fully above and, as a result, Green Tree is liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## JURY TRIAL DEMAND

79. Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that relief be granted as follows:

    (a) Actual damages;

    (b) Statutory damages;

    (c) Punitive damages;

    (d) Costs and reasonable attorneys' fees; pursuant to 15 U.S.C. §§ 1681n and 1681o and Cal. Civ. Code § 1785.19(b); and

(e) Such other and further relief as may be just and proper.

Respectfully Submitted,

**TATAR LAW FIRM, APC**

BY: _____
Stephanie Tatar

Attorney for Plaintiff

DATE: April 25, 2013

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is Sheri Pym.

The case number on all documents filed with the Court should read as follows:

**EDCV13- 779 SVW (SPx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)  NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Stephanie R. Tatar (237792)
TATAR LAW FIRM, APC
3500 West Olive Avenue, Suite 300
Burbank, CA 91505
Telephone: (323) 744-1146
Facsimile: (888) 778-5695

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| George Mason | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | EDCV13-0779 SVW (SPx) |
| v. | |
| Equifax Information Services LLC and Green Tree Servicing LLC | SUMMONS |
| DEFENDANT(S). | |

TO: DEFENDANT(S): Equifax Information Services LLC and Green Tree Servicing LLC

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Stephanie R. Tatar_____, whose address is _3500 West Olive Ave., Suite 300, Burbank, CA  91505_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: APR 29 2013           By: JULIE PRADO
                                  Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                    SUMMONS

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
George Mason

**DEFENDANTS**
Equifax Information Services LLC and Green Tree Servicing LLC

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Stephanie R. Tatar, TATAR LAW FIRM, APC
3500 West Olive Avenue, Suite 300
Burbank, CA 91505   (323) 744-1146

**Attorneys (If Known)**

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only.
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☑ **MONEY DEMANDED IN COMPLAINT:** $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | | | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | | | ☐ 441 Voting | | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | | | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | | ☐ 690 Other | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | ☐ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | | |
| | ☐ 290 All Other Real Property | | | | |

EDCV13-0779

**FOR OFFICE USE ONLY:**   Case Number: _____
AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                                    CIVIL COVER SHEET                                    Page 1 of 2

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a). IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

VIII(b). RELATED CASES: Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Riverside |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | GA; MN |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | GA; MN |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date 4-25-13

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |